Kenneth A. Volden, Plaintiff-Appellant,

v.

Loni Koenig, John Scholke, Mary Lautenschlae-
ger and Judy Siebert, Defendants-Respondents.

Court of Appeals

*No. 01–0433. Submitted on briefs October 17, 2001.—Decided
November 14, 2001.*

2001 WI App 290

(Also reported in 638 N.W.2d 906.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Kenneth A. Volden*, pro se.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Carl K. Buesing* of *Hopp, Powell, Bauer, Donohue & Buesing* of Sheboygan.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J.   We are asked to determine whether the patients' rights law contained in WIS. STAT. § 51.61 (1999–2000)[1] applies to an individual while he or she is in the custody of the sheriff pending resolution

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

of an involuntary commitment hearing. We determine that WIS. STAT. ch. 980 detainees are "patients" as that term is defined in § 51.61 only when they are receiving treatment, care or services in a treatment facility. Because an individual in the custody of the sheriff pending an involuntary commitment hearing is not in a facility to receive treatment, care or services, we conclude that he or she is an inmate to whom the patients' rights law does not apply.

¶ 2. In February 1998, Kenneth A. Volden became subject to a WIS. STAT. ch. 980 civil commitment petition filed in the circuit court of Sheboygan county. Subsequently, the circuit court issued a Writ of Habeus Corpus Ad Prosequendum requiring the Sheboygan county sheriff to transport and detain Volden for further proceedings. Based on that writ, Volden arrived at the Sheboygan county jail on October 23, 1998, where he remained until October 29, 1998, when he was returned to the Wisconsin Resource Center. Pursuant to a subsequent writ, the sheriff again retrieved and booked Volden into the Sheboygan county jail on December 14, 1998, where he remained for two days before returning to the Wisconsin Resource Center.

¶ 3. The health screening sheet completed upon Volden's October admission to the county jail indicated an ambiguity with respect to the issue of "special diet prescribed by doctor." There was a "yes" marked, but there was also a question mark between the words "doctor" and "lactovegetarian." In order to clarify the ambiguity, the jail nurse contacted the dietary section of the Wisconsin Resource Center. She was told that Volden adhered to a regular vegetarian diet, and that patients at the Wisconsin Resource Center have the option to elect a menu based on personal choice and not based on a medical or religious claim. Based on that

conversation, the jail nurse concluded that Volden's dietary requests for a lactovegetarian diet were not for medical reasons but for personal reasons.

¶ 4. In anticipation of the December admission, the jail nurse was in further contact with the staff at the Wisconsin Resource Center regarding Volden's diet. This time she spoke to Dr. Norman Heinz, a psychiatrist. Heinz advised her that Volden had alternated between a lactovegetarian and regular vegetarian diet based on his personal choice. Again, the jail nurse determined that Volden's dietary wishes had no medical or religious basis. Accordingly, while Volden was in the custody of the sheriff during October and December he was served regular jail food without accommodation for his lactovegetarian preferences.

¶ 5. Volden filed pro se a complaint against the Sheboygan county sheriff, two officers and the jail nurse (the "County"). He alleged that while he was in custody at the Sheboygan county jail, he was a "patient" entitled to various patients' rights contained in WIS. ADMIN. CODE ch. HFS 94. He demanded injunctive relief as well as monetary damages provided under WIS. STAT. § 51.61(7). The parties filed cross-motions for summary judgment; the trial court issued an oral decision in favor of the County and issued a written judgment on December 27, 2000.

¶ 6. We review summary judgment decisions de novo, applying the same methodology as the trial court. *Tower Ins. Co. v. Carpenter*, 205 Wis. 2d 365, 369, 556 N.W.2d 384 (Ct. App. 1996). That methodology is well established and we need not repeat it here except to note that summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995).

¶ 7. The patients' rights law contained in WIS. STAT. § 51.61 of Wisconsin's Mental Health Act guarantees certain health care, privacy and treatment rights to mentally ill patients. It provides that any patient whose rights are protected by § 51.61 may sue for a violation of those rights when the violation results in actual damages or was willfully and knowingly done. Sec. 51.61(7)(a), (b). These rights are further defined and clarified in WIS. ADMIN. CODE HFS ch. 94.

¶ 8. Volden alleges that because he was denied a lactovegetarian diet and was filmed by a surveillance camera, his patient rights were violated and he is entitled to damages. In particular, Volden claims a violation of WIS. ADMIN. CODE § HFS 94.24(4)(a), which states "[e]ach inpatient shall be provided a nutritional diet which permits a reasonable choice of appealing food served in a pleasant manner," and a violation of (4)(d), which states "[m]enu preparation shall take into account customary religious, cultural or strongly-held personal convictions of inpatients." He also asserts a violation of WIS. ADMIN. CODE § HFS 94.18(1) which prohibits unauthorized recording, photographing, and filming of patients.

¶ 9. The patients' rights set forth in WIS. STAT. § 51.61 and WIS. ADMIN. CODE § HFS 94.05–.31 apply to sexually violent persons committed under WIS. STAT. ch. 980. *State v. Anthony D.B.*, 2000 WI 94, ¶ 13, 237 Wis. 2d 1, 614 N.W.2d 435. In this instance, however, we are required to determine whether a ch. 980 detainee retains the status of a patient entitled to the patients' rights law when he or she is outside the treatment facility. Volden points to no legal authority in

support of his contention that an involuntarily committed person remains a "patient" while in the temporary custody of the sheriff. To the contrary, we are persuaded that while Volden was in the county jail, he was not a patient entitled to the protections of the patients' rights law.

¶ 10. As a preliminary matter, we note that Volden was placed in the Sheboygan county jail pursuant to court-ordered writs. The statute that authorizes execution of writs contemplates that individuals institutionalized under the care of the Department of Health and Family Services (DHFS) will be housed in the county jail. *See* WIS. STAT. § 782.45(2) ("the [DHFS] and the department of corrections, upon 48 hours' advance notice, shall release to any sheriff having a suitable jail approved by the department of corrections for this purpose any prisoner upon presentation of a writ of habeas corpus to the warden or superintendent of the institution which is detaining the inmate."). This statute further provides that during the term of this temporary incarceration, the inmate is not permitted to have visitors or to receive mail except as otherwise authorized. *Id.* These restrictions are directly contrary to the patients' rights rules contained in WIS. ADMIN. CODE § HFS 94.19 ("Each inpatient shall be allowed to send and receive sealed mail. . . .") and § 94.21 ("Each inpatient shall be permitted to see visitors each day. . . ."). Consequently, this statute comports with our determination that an individual institutionalized under the care of DHFS is not entitled to the protections of the patients' rights law while in the temporary custody of the sheriff.

¶ 11. This conclusion is further corroborated by the definition of "patient" contained in the patients' rights statute and incorporated into ch. 94 of the

289

administrative code. *See* WIS. ADMIN. CODE § HFS 94.02(32). WISCONSIN STAT. § 51.61(1) defines the word "patient" as:

> [A]ny individual who is receiving services for mental illness, developmental disabilities, alcoholism or drug dependency, including any individual who is admitted to a treatment facility in accordance with this chapter or ch. 48 or 55 or who is detained, committed or placed under this chapter or ch. 48, 55, 971, 975 or 980, or who is transferred to a treatment facility under s. 51.35(3) or 51.37 or who is receiving care or treatment for those conditions through the department or a county department under s. 51.42 or 51.437 or in a private treatment facility.

The attorney general interpreted this paragraph in determining whether a WIS. STAT. § 51.20 detainee was a patient subject to the right to be free from physical restraint while in the custody of the sheriff pending an involuntary commitment hearing. 71 Op. Att'y Gen. 183 (1982). The attorney general concluded that the detainee was not a patient within the definition of the statute because while in the sheriff's custody, the detainee was not in a facility to receive services, care or treatment. *Id.* We find the following reasoning of the attorney general persuasive and adopt it in this case:

> Implicit in this definition is the fact that a patient is in a physical setting appropriate to receive "services," "care" or "treatment" for the conditions enumerated in sec. 51.61(1), Stats. The concept of receiving services, treatment or care is severely strained if a person is deemed to be receiving such services, treatment or care when in the custody of the sheriff for transport to, from and during an involuntary commitment hearing.

71 Op. Att'y Gen. at 184. Volden cannot reasonably argue that he received services or treatment during his

confinement in the Sheboygan county jail. Furthermore, no reasonable interpretation of the phrase "treatment facility" would include the county jail.[2] Therefore, we conclude, as did the attorney general, that WIS. STAT. § 51.61 applies only to "patients" and that individuals in the custody of the sheriff for transport to, from and during an involuntary commitment hearing do not retain the status and rights afforded to patients.

¶ 12. Based on the foregoing, we conclude that once Volden was removed from the Wisconsin Resource Center by execution of the writs, he was no longer a patient as that term is defined in WIS. STAT. § 51.61. Therefore, the rights and privileges applicable to inmates, rather than patients, applied to Volden while he was in the temporary custody of the sheriff. Volden does not assert a violation of the rights afforded to inmates while confined in the county jail. Therefore, we affirm the trial court's grant of summary judgment in favor of the County.

*By the Court.*—Judgment affirmed.

---

[2] WISCONSIN STAT. § 51.01(19) defines "treatment facility" as any publicly or privately operated facility or unit thereof providing treatment of alcoholic, drug dependent, mentally ill or developmentally disabled persons, including but not limited to inpatient and outpatient treatment programs, community support programs and rehabilitation programs.