**Dennis R. THIEL, Petitioner,**

v.

**State of WISCONSIN; Helene Nelson, Secretary of the Wisconsin Department of Health and Family Services; Steve Watters, Director of Sand Ridge Secure Treatment Center; Fond du Lac County Sheriff Name Unknown; Fond du Lac County Sheriff Deputy's 1) J. Landwheir, 2) Deputy Sinjacovic, and 3) Unknown Sheriff's Deputy's and or Officer's, Respondents.**

No. 05–C–612–C.

United States District Court,
W.D. Wisconsin.

Nov. 17, 2005.

Dennis R. Thiel, pro se.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for Defendants.

## ORDER

CROCKER, District Judge.

This is a proposed civil action for declaratory, injunctive and monetary relief, brought under 42 U.S.C. § 1983. Petitioner Dennis Thiel is presently detained by the state of Wisconsin at the Sand Ridge Secure Treatment Center in Mauston, Wisconsin, pursuant to Wisconsin's Sexually Violent Persons Law, Wis. Stat. ch. 980. He seeks leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915.

From the financial affidavit petitioner has given the court, I conclude that petitioner is unable to prepay the full fees and costs of starting this lawsuit. Because he is a patient and not a prisoner, petitioner is not subject to the 1996 Prison Litigation Reform Act.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, pursuant to 28 U.S.C. § 1915(e)(2), if a litigant is requesting leave to proceed *in forma pauperis,* the court must deny leave to proceed if the action is frivolous or malicious, fails to state a claim on which relief may be granted or seeks money damages from a defendant who is immune from such relief.

In his complaint, petitioner alleges the following facts.

### ALLEGATIONS OF FACT

#### A. *Parties*

Petitioner Dennis Thiel is presently detained under the custody of the Wisconsin Department of Health and Family Services as a patient under Wisconsin's Sexually Violent Persons Law, Wis. Stat. ch. 980. He is detained at the Sand Ridge Secure Treatment Center in Mauston, Wisconsin. Respondent State of Wisconsin has authority over the Department of Health and Family Services. Respondent Helene Nelson is Secretary of the Department of Health and Family Services. Respondent Steve Watters is Director of the Sand Ridge Secure Treatment Center. Respondent Fond du Lac County Sheriff has supervisory and administrative authority over the Fond du Lac County Sheriff's Department, including respondents Fond du Lac County sheriff's deputies Landwheir, Sinjacovic and unknown deputies and officers.

#### B. *Petitioner's Security Classification and Housing Status*

Before petitioner was committed civilly, he was sentenced to six years in prison for sexually assaulting his daughter. That crime served as the basis for his civil commitment. Petitioner is considered to have a severe mental illness. He is receiving treatment at Sand Ridge that is considered specialized and necessary to meet his needs. He is considered to require the highest level of security and has never been assessed for a less restrictive security classification.

Sex offenders are separate from other persons detained by the state and require the highest level of security. Both the Wisconsin Department of Corrections and the Department of Health and Family Services have security classification systems that permit an individual's classification to change from a higher level of security to a lower level of security. However, there is no security classification system for ch. 980 patients that allows for movement to a less restrictive environment and no facility designated as a less restrictive facility for ch. 980 patients. The Department of Corrections provides security at Sand Ridge but the facility is administered by the Department of Health and Family Services.

Petitioner resides on the initial treatment wing. The patients who reside on A wing include those in treatment and those who are refusing treatment. In March 2003, petitioner was removed from an F wing unit. This move was not in response to a behavioral issue. Units on A wing are controlled through a "Sallie port" whose doors are controlled from a central control area for the wing. Units on A wing have three secure doors while units on F wing do not have a "Sallie port" and only one door to gain access to the institution which is usually left unlocked during the day.

### C. Transportation to Fond du Lac County Jail

On numerous occasions, petitioner has been transported by Fond du Lac County sheriff's deputies for court proceedings. The trip from Sand Ridge to the county jail takes about two hours. Before he is transported to the jail, petitioner is strip searched at Sand Ridge, dressed in state-issued green clothing and placed in handcuffs, a waist chain and leg irons. The clothing is the same as that used by Wisconsin prisoners. Petitioner has never been given a Client Rights Limitation/Denial Documentation form in connection with the denial of the opportunity to wear his own clothes to the jail. On occasion, petitioner is detained at the jail overnight. He is not given any recreation time or access to television or radio. A deputy selects his reading material from a collection of old books.

### D. Treatment at Fond du Lac County Jail

On September 2, 2005, after arriving at the Fond du Lac County courthouse, petitioner was escorted inside by a sheriff's deputy who led him to a public restroom and told him to change into his personal clothes. Petitioner's restraints were removed and he was allowed to change inside a stall. A second deputy arrived while petitioner was changing and said that he would not have allowed petitioner to change. Once petitioner was done changing he was escorted to the courtroom. After the first session was over, another deputy placed petitioner in handcuffs, a waist chain and leg irons and took him to the county jail's receiving area. In the receiving area, petitioner was told to take off his tie, suit coat and shoes. His restraints were removed and he was placed in a cell and given a cold lunch consisting of a sandwich, banana, chips and a "sugar sweetened drink in a box." Petitioner asked about his medication and was informed that it was being prepared. He received his medication along with a paper cup to fill with water at approximately 12:45 p.m. The sheriff's deputies at the jail dispense medication to the inmates. Petitioner noticed that the medication he received was the same that he was given at Sand Ridge during the 11:00 a.m. distribution.

Shortly after being given his medication, petitioner was given his clothes, put into restraints and escorted back to the courtroom. An officer refused to remove his restraints. Petitioner's attorney told the court of the problem but the court refused to order the restraints removed. Around 1:45 p.m., petitioner was escorted back to the jail. His restraints were removed and he was ordered to change into the green prison clothing. Respondent Sinjacovic directed him to the restroom in the cell which was separated by a door. Respondent Sinjacovic told petitioner to leave the door open. Petitioner told him that he was a civilly committed patient and that he had a right to wear his personal clothing.

Around 6:30 p.m. that evening, petitioner asked respondent Landwheir for his pain medication, Darvon. Respondent Landwheir left and returned with a list of medications that he claimed had been sent by Sand Ridge. He showed petitioner the list but petitioner was unable to read it clearly. Petitioner saw something on the list that looked like Darvon but respondent Landwheir said that petitioner had already been given the medication he identified. Nothing further was done after petitioner asked for his medication and he was not given any Tylenol. Petitioner was told that he was considered an inmate and that he would be treated like one. Petitioner's medication may not have been placed on a medical transfer form. In addition, not all of his medical orders were placed on the form, such as the orders allowing him to

sit on a blanket or cushion and to have an extra mattress.

In total, petitioner sat in the cell from 2:00 p.m. to 8:00 p.m. before being escorted back to Sand Ridge. Before being taken back to Sand Ridge, petitioner was placed in restraints. He was not given medication that he normally receives at Sand Ridge at 8:00 p.m. During the trip, he observed the deputy traveling at speeds in excess of 75 miles per hour. The deputy who drove petitioner back talked on his cellular phone for most of the trip. He told petitioner that he was an avid hunter and that he had chosen a road he knew had deer nearby. He told petitioner that he was scheduled to be done with work at 10:00 p.m. and that he was upset that he had been given this assignment. Petitioner discerned that he was using the cellular phone to tell his friends that he would be getting off work late. The deputy lost the signal on his phone numerous times. The deputy gestured as they drove through the area that contained a lot of deer. Petitioner thought that a deer might jump out of the woods. He prayed that the deputy would not hit a deer or have to swerve to avoid hitting a deer. Petitioner arrived at Sand Ridge around 9:50 p.m. After arriving at Sand Ridge, petitioner was strip searched and taken to his unit. He wanted to be back in his room because it was safe and did not ask for his medication.

### E. *Volden v. Koenig*

In *Volden v. Koenig*, 2001 WI App 290 249 Wis.2d 284, 638 N.W.2d 906 (2001), the Court of Appeals of Wisconsin ruled that ch. 980 patients are no longer considered "patients" for the purpose of Wis. Stat. § 51.61 when they are removed from a mental health center pursuant to a writ. Therefore, the rights and privileges accorded to patients under Wis. Stat. § 51.61 do not apply and the individual receives the rights and privileges of an inmate. The case was appealed to the Wisconsin Supreme Court, which refused to review the decision. Respondents Watters and Nelson did not provide notice that patients would lose their rights and privileges while being transported. The Wisconsin legislature has not enacted a law depriving ch. 980 patients of the protections of Wis. Stat. § 51.61 while they are transported and it has not provided notice concerning a change in the rights of patients in its custody.

## DISCUSSION

The crux of petitioner's complaint appears to be his displeasure at being treated like a prison inmate when he is transported to the Fond du Lac County jail for court proceedings in connection with his confinement as a ch. 980 patient. Unfortunately for petitioner, nothing in the United States Constitution prevents state officials from temporarily detaining a civil committee in conditions normally reserved for inmates so that he may attend court proceedings concerning his commitment.

### A. *Due Process*

#### 1. *Security classification*

■ Petitioner alleges that he has not been assessed for a less restrictive security classification since he has been detained as a ch. 980 patient. More broadly, he alleges that the state of Wisconsin classifies all ch. 980 patients as maximum security and does not provide a process for determining whether some patients may be moved to a less restrictive classification. Also, he alleges that Wisconsin has no facility for ch. 980 patients who are not classified maximum security. I understand him to allege that these conditions violate his rights under the due process clause of the Fourteenth Amendment.

To state a due process claim, petitioner must allege that state actors have deprived him of a protected property or liberty

interest without providing proper procedural protections. *Averhart v. Tutsie,* 618 F.2d 479, 480 (7th Cir.1980). It is well-settled that prison inmates do not have a liberty interest in remaining in a specific security classification. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (in prison context, liberty interests limited to freedom from restrictions that are atypical and significant in relation to ordinary incidents of prison life). In *Thielman v. Leean,* 282 F.3d 478 (7th Cir. 2002), the Court of Appeals for the Seventh Circuit extended the *Sandin* standard to ch. 980 patients. It held that a patient cannot state a due process claim unless he can "identify a right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement." *Id.* at 484. In this case, petitioner concedes that the maximum security classification applies to all ch. 980 patients. The classification, and the restrictions that come with it, are ordinary incidents of ch. 980 confinement. Therefore, petitioner's maximum security classification is not an atypical and significant hardship and does not implicate a liberty interest. Petitioner will be denied leave to proceed on this claim.

## 2. *Housing status*

▪ I understand petitioner to allege that his due process rights were violated in March 2003 when he was moved from F wing to A wing, which is a more secure unit on the initial treatment wing at Sand Ridge. Just as petitioner does not have a liberty interest in his security classification, his transfer from a less secure unit to a more secure unit does not implicate a liberty interest. *Cf. Wagner v. Hanks,* 128 F.3d 1173, 1176 (7th Cir.1997) (inmate's transfer from general population to more restrictive conditions of disciplinary segregation did not implicate liberty interest). Therefore, he will be denied leave to proceed on this claim.

## 3. *Strip search, prison clothing and placement in restraints before transport*

▪ I understand petitioner to allege that his due process rights are violated when he is strip searched, dressed in green prison clothes and placed in restraints before being transported to the Fond du Lac County jail. His claim regarding the restraints used during transport outside Sand Ridge is foreclosed by *Thielman,* 282 F.3d 478, in which the court held that a ch. 980 patient does not have a liberty interest in avoiding restraints while being transported outside a mental health facility. *See also Knox v. McGinnis,* 998 F.2d 1405 (7th Cir.1993) (upholding use of "black box" on handcuffs as restrictive mechanism on special status prisoners during transport); *Allison v. Snyder,* 332 F.3d 1076 (7th Cir.2003) (ch. 980 patients "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others"). Similarly, petitioner's allegations that patients are strip searched and dressed in standard green clothing before transport outside Sand Ridge do not state a claim under the Fourteenth Amendment. Petitioner will be denied leave to proceed on this claim.

## 4. *Treatment at Fond du Lac County jail*

▪ With one exception, none of petitioner's allegations concerning his treatment at the Fond du Lac County jail on September 2, 2005 or his transportation from the jail to Sand Ridge that night are sufficient to state a constitutional claim. The due process clause does not prohibit state officials from detaining civil committees or pretrial detainees temporarily with persons who have been convicted of crimes and treating them according to the rules applicable to inmates. *Allison v. Snyder,* 332 F.3d 1076, 1078 (7th Cir.2003) (complaint alleging that persons under civil

commitment were housed in institution that also housed prison inmates and that civil committees mingled with inmates on occasion failed to state claim).

█ The exception is petitioner's allegation that respondent Landwheir did not give him Darvon or Tylenol on the evening of September 2, 2005. Petitioner alleges that respondent Landwheir refused to give him Darvon because it was not on a list of medications that had been prepared by staff at Sand Ridge. Petitioner suggests that his medication may have been left off the form.

The Eighth Amendment extends the right to adequate medical care to prison inmates, but it does not apply to petitioner because he is not a prisoner. However, the Court of Appeals for the Seventh Circuit has held that non-prisoners detained by the state are entitled under the due process clause to medical care at least as adequate as that guaranteed to incarcerated individuals. *Jackson v. Illinois Medi-Car, Inc.* 300 F.3d 760, 764 (7th Cir.2002). Accordingly, the standard that governs a prisoner's inadequate medical care claim under the Eighth Amendment applies also to a non-prisoner's medical care claim. *Id.* Under that standard, a non-prisoner must allege facts sufficient to suggest deliberate indifference to a serious medical need. *Id.* Petitioner's allegation that he was denied a single dose of medication is insufficient to meet this standard. Petitioner alleges that Darvon is a pain medication but does not indicate what malady it was intended to treat. Therefore, he has failed to allege the existence of a serious medical need. Also, petitioner alleged that respondent Landwheir refused to give him Darvon because it was not on a list of medications that had been prepared by Sand Ridge staff. This is insufficient to suggest that respondent Landwheir acted with deliberate indifference. In fact, petitioner himself suggests that the medication may have

been left off the list by accident. Because petitioner has not alleged facts from which an inference can be drawn that respondent Landwheir's refusal to give him a single dose of medication constituted deliberate indifference to a serious medical need, he will be denied leave to proceed on this claim.

### B. *The Volden Decision*

█ In his prayer for relief, petitioner asks this court to overrule the Wisconsin Court of Appeals' decision in *Volden*. I understand petitioner to argue that the holding must be overruled because it violates his rights under the due process clause of the Fourteenth Amendment and his right to prompt and adequate treatment under Wis. Stat. § 51.61(f). He alleges further that the *Volden* decision must be overruled because it is the job of the Wisconsin legislature to enact laws and the legislature has not enacted any law that deprives ch. 980 patients of their rights under Wis. Stat. § 51.61.

Lower federal courts have no authority to overrule the decision of a state court; in fact, the *Rooker–Feldman* doctrine holds that lower federal courts do not even have jurisdiction to hear claims seeking review of state court judgments "because no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Federal National Mortgage Ass'n,* 374 F.3d 529, 532 (7th Cir.2004) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). Because this court does not have jurisdiction to hear petitioner's claim that the *Volden* decision violates his constitutional rights or impinges on the powers

of the Wisconsin legislature, he will be denied leave to proceed on this claim.

## ORDER

IT IS ORDERED that:

1. Petitioner Dennis Thiel is DENIED leave to proceed *in forma pauperis* on all claims raised in this lawsuit;

2. This case is DISMISSED with prejudice for petitioner's failure to state claim upon which relief may be granted; and

3. The clerk of court is directed to close the file.