**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 13, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1204**

**STATE OF WISCONSIN**

Cir. Ct. No. 1998CI17

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE COMMITMENT OF THOMAS TREADWAY:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

THOMAS TREADWAY,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: DENNIS R. CIMPL, Judge. *Affirmed.*

      Before Brash, P.J., Kessler and Brennan, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Thomas Treadway appeals a circuit court order permitting the State to medicate him without his consent.   He claims that the State presented insufficient evidence to support the order.   We affirm.

**Background**

¶2    Treadway is a sexually violent person committed to the custody of the Department of Health Services.   *See* WIS. STAT. ch. 980 (2017-18).[1]   Since his original commitment in 1999, the circuit court has entered a series of orders subjecting him to the involuntary administration of medication.   When the sixth such order expired in 2015, DHS personnel did not immediately seek another because Treadway was compliant with his medication regimen.   In 2016, however, he began intermittently refusing medication, and he correspondingly began to exhibit increasing paranoia and violent behavior.   In January 2018, Dr. Hugh Johnston, Treadway's treating physician at Sand Ridge Secure Treatment Center, filed a petition to permit medicating and treating Treadway without his consent, alleging that Treadway was not competent to refuse the medication and treatment that he required.   Attached to the petition was a report dated January 11, 2018, signed by Johnston and by a second treatment provider, Dr. Donald Stonefeld.

¶3    The petition and attached report reflect that Treadway is mentally ill and intellectually disabled.   He carries diagnoses of:   (1) Schizophrenia, continuous (formerly categorized as paranoid schizophrenia); (2) Intellectual Disability, mild; and (3) Other Specified Personality Disorder, with antisocial features.   He has a full scale IQ of 64, which is in the "extremely low range."   He

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

requires psychotropic medication to combat his paranoia and control his violent behavior, but as of the date of the report he was refusing medication with increasing frequency.

¶4    The report documented that on November 20, 2017, Johnston entered a psychiatric progress note stating that he had met with Treadway and explained the risks, benefits, side effects, and alternatives to his prescribed medications.  Treadway, however, was incapable of applying that information because he did not believe he was mentally ill.  Further, the report reflected that Johnston had "many conversations" with Treadway in the preceding months about the advantages and disadvantages of medication, but "consistent with [Treadway's] cognitive disability," he was unable to understand the explanations. Then, in a meeting with Johnston on December 26, 2017, Treadway "emphatically" refused medication and would not discuss the matter.

¶5    Johnston and Stonefeld explained in their report that Treadway was becoming "intensely paranoid," and the report included descriptions of Treadway's violent episodes and threats to harm staff members during December 2017.  Additionally, the report reflected that Treadway's paranoia "extends to the medications themselves and fosters continued medication refusal."  Johnston and Stonefeld concluded that the refusal to take medication led to Treadway's increasing hostility and "resulted in a vicious cycle."  Therefore, they requested that the court permit involuntary medication and treatment.

¶6    The circuit court conducted a hearing on January 26, 2018. Stonefeld testified that he was a psychiatrist with more than forty years of experience, and he authenticated the January 11, 2018 report, which the circuit court admitted as an exhibit.  Stonefeld went on to describe Treadway's diagnoses,

the violence and hostility occasioned by Treadway's acute paranoia, and Treadway's need for medication. Stonefeld further testified that he met with Treadway two weeks before the hearing and tried to engage him in a discussion about his medication but Treadway was unable to apply the information to his situation because he did not believe he had a mental illness.

¶7     Treadway also testified. He said that he "d[id]n't have anything against taking the medication. As a matter of fact, [he] feel[s] a lot better taking the medication." He went on to describe an incident during which police restrained him in connection with a medical appointment, and he suggested that this incident led him to refuse medication.

¶8     Additionally, Treadway offered commentary during the proceeding. He interrupted Stonefeld's testimony to assert that he was "not schizophrenic," and, after completing his own testimony, he added that he was not bothered by the side effects of his prescribed medication because he received additional medicine to address those side effects.

¶9     The circuit court ruled from the bench, finding first that Stonefeld was credible. Based on his testimony and the report he prepared, the circuit court found that Treadway was mentally ill, specifically, that he suffered from schizophrenia; that he was cognitively disabled; and that he posed a risk of harm to himself and others unless he was medicated. The circuit court went on to find that Treadway was substantially incapable of applying an understanding of the information he received about medication to his particular mental illness and that he could not make an informed choice about whether to accept or refuse psychotropic medication or treatment. Accordingly, the circuit court concluded that Treadway was incompetent to refuse medication and signed an order that he

was subject to the involuntary administration of medication. He appeals, challenging the sufficiency of the evidence.

## Discussion

¶10 When the government seeks to involuntarily medicate a person, it "bears the burden of proving [the person] incompetent to refuse medication by clear and convincing evidence." *See* ***Winnebago Cty. v. Christopher S.***, 2016 WI 1, ¶49, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted; bracketed language amended). On review, this court "will not disturb the circuit court's factual findings unless they are clearly erroneous" and "we accept reasonable inferences from the facts available to the circuit court." ***Id.***, ¶50 (citation omitted). Whether the facts satisfy the burden of proof is a question of law that we review *de novo*. *See* ***id.***

¶11 The parties agree that because Treadway is committed to the custody of DHS pursuant to WIS. STAT. ch. 980, he is a patient "entitled to the patients' rights set forth in WIS. STAT. ch. 51." *See* ***State v. Anthony D.B.***, 2000 WI 94, ¶13, 237 Wis. 2d 1, 614 N.W.2d 435. A patient's competence to refuse medication is determined under WIS. STAT. § 51.61(1)(g)4. The statute provides, in pertinent part:

> [A]n individual is not competent to refuse medication or treatment if, because of mental illness, developmental disability, alcoholism or drug dependence, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual[:]
>
> ....
>
> b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make

an informed choice as to whether to accept or refuse medication or treatment.

***Id.***, § 51.61(1)(g)4.b.[2]

¶12    On appeal, Treadway first complains that the State failed to satisfy its statutory obligation to prove that he received an explanation of the "advantages, disadvantages and alternatives to" psychotropic medication.  *See **id.***  Specifically, he asserts that "it is not clear when Dr. Johnston ... provided the statutorily [required] explanation" and that the record does not include testimony about the specifics of the explanations Treadway received.  We reject these arguments.

¶13    The January 11, 2018 report signed by both Johnston and Stonefeld explicitly states that Johnston documented a discussion with Treadway on November 20, 2017, approximately two months before the hearing.  The report memorializes that Johnston "enumerated risks, benefits, side effects, and alternatives related to various medications."  Further, the report memorializes that Johnston and Treadway had many similar conversations during the months preceding the hearing.

¶14    Additionally, Stonefeld testified that he met with Treadway on January 12, 2018.  Stonefeld said that he attempted at that time to explain the

---

[2] WISCONSIN STAT. § 51.61(1)(g)4., includes an additional way to prove an individual is not competent to refuse medication, namely, by showing that the individual "is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives."  *See* § 51.61(1)(g)4.a.  The supreme court has observed that this can be a "difficult standard," depending on the circumstances.  *See **Outagamie Cty. v. Melanie L.***, 2013 WI 67, ¶54, 349 Wis. 2d 148, 833 N.W.2d 607.  In this appeal, the State maintains that it satisfied the burden of proof under both § 51.61(1)(g)4.a. and § 51.61(1)(g)4.b.  The circuit court, however, entered findings and conclusions reflecting its determination that the State satisfied the latter provision.  Because we agree with the circuit court, we do not consider whether the State also satisfied § 51.61(1)(g)4.a.  *See **State v. Hughes***, 2011 WI App 87, ¶14, 334 Wis. 2d 445, 799 N.W.2d 504 (we decide cases on narrowest possible grounds).

benefits of treatment but Treadway responded that he would take medication only if he had a mental illness, and he denied that he was mentally ill.

¶15    Treadway testified on his own behalf and provided additional evidence that he had received the required information.  He indicated that he was aware of the advantages of medication, telling the circuit court that he "feel[s] a lot better taking medication."    He also indicated his awareness of the disadvantages, acknowledging that the medication causes side effects but stating that they do not bother him because a supplemental medication controls them.  In short, the January 11, 2018 report, coupled with the testimony, showed that Treadway received information about and was familiar with the advantages, disadvantages, and alternatives to psychotropic medication.  Indeed, the evidence was uncontested.[3]

¶16    Where the undisputed evidence mirrors the statutory language and establishes that the patient received information about the advantages, disadvantages, and alternatives to medication, the evidence satisfies the statutory standard.  *See* *Christopher S.*, 366 Wis. 2d 1, ¶¶54-56.  That is the case here.

---

[3] Treadway complains that "there was no documentation" of his discussion with Stonefeld about the risks and benefits of taking medication, "as required by *Melanie L.*"  This assertion mischaracterizes both the record and *Melanie L.*  Stonefeld, who testified by telephone, explained that he was "reading from [his] report" as he described Treadway's response to an explanation about the use of psychotropic medications.  Stonefeld also explicitly acknowledged that he, along with Johnston, signed the January 11, 2018 report detailing the discussions with Treadway that are memorialized in progress notes dated, e.g., November 20, 2017, and December 26, 2017.  Regardless, *Melanie L.* does not mandate documentation of a patient's discussion with treatment providers.    Rather, *Melanie L.* states that "[m]edical professionals and other professionals should document the timing and frequency of their explanations so that, if necessary, they have documentary evidence to help establish this element in court."  *Id.*, 349 Wis. 2d 148, ¶67.  Here, the record shows that the doctors involved in Treadway's treatment memorialized their interactions with Treadway sufficiently to establish in court the fact and frequency of the explanations that he received.  Nothing further is required.  *See* *Winnebago Cty. v. Christopher S.*, 2016 WI 1, ¶56, 366 Wis. 2d 1, 878 N.W.2d 109.

Accordingly, Treadway fails to show that the evidence was insufficient to prove he received information as required about the advantages, disadvantages, and alternatives to medication.

¶17    Treadway next asserts that the evidence was insufficient to prove he was "substantially incapable of applying an understanding" of the information he received about the medication to his mental illness.    *See* WIS. STAT. § 51.61(1)(g)4.b.  We disagree.

¶18    In ***Outagamie County v. Melanie L.***, 2013 WI 67, 349 Wis. 2d 148, 833 N.W.2d 607, the supreme court discussed the government's burden to prove under WIS. STAT. § 51.61(1)(g)4.b. that a person is "substantially incapable" of applying necessary information and emphasized that "substantially incapable" is a "less rigorous standard" than "incapable."    *See* ***Melanie L.***, 349 Wis. 2d 148, ¶¶69-70; *see also* ***id.***, ¶54 (standard codified in § 51.61(1)(g)4.b. is "somewhat relaxed").    The court went on to hold that the statutory standard requires a showing that "to a considerable degree, a person lacks the ability or capacity ... to make a connection between an expressed understanding of the benefits and risks of medication and the person's own mental illness."  *See* ***Melanie L.***, 349 Wis. 2d 148, ¶¶70-71(emphasis omitted).

¶19    Here, the January 11, 2018 report reflected that Johnston had "many conversations" with Treadway about risks, benefits, and alternatives to medications, but Treadway's responses demonstrated "that his understanding is too limited to provide a rational basis for making consent decisions."  The report stated that "this is consistent with [Treadway's] cognitive disability," specifically his very low IQ of 64.  At the hearing, Stonefeld elaborated on why Treadway was not only unable to understand the necessary information regarding advantages,

disadvantages, and alternatives to medication but was also incapable of applying that information to his particular mental illness. Specifically, Stonefeld testified that the "fundamental error" characterizing a schizophrenic patient's thinking is the certainty that the patient is not ill: "[i]n the middle of the acute phase or even moderately acute phase there is no acceptance of the idea of mental illness." Stonefeld also described Treadway's most recent statements that he was not mentally ill and therefore would not take the medications prescribed for him.

¶20    In *Melanie L.*, the supreme court acknowledged the potentiality "that if a person cannot recognize that he ... has a mental illness, logically the person cannot establish a connection between his ... expressed understanding of the benefits and risks of medication and the person's own illness." *Id.*, ¶72.; *see also Winnebago Cty. v. M.O.S.*, No. 2015AP2619, unpublished slip op. ¶8 (WI App June 15, 2016) (noting that, under *Melanie L.*, lack of insight and denial of mental illness can show that a person is unable to apply an understanding of psychotropic treatment to the person's condition).[4]  This is such a case. The record shows that Treadway suffers from schizophrenia and a significant cognitive impairment.  He does not recognize that he is mentally ill, however, and his untreated illness and his intellectual limitations prevent him from understanding and applying the information he receives about medication to the facts of his illness.  Again, the record contains no contrary evidence.

¶21    Treadway next asserts that the State failed to present evidence that he held "patently false beliefs regarding the medication."  We cannot agree.  The

---

[4] Pursuant to WIS. STAT. RULE 809.23(3)(b)., unpublished authored opinions issued on or after July 1, 2009, may be cited for their persuasive value.

January 11, 2018 report expressly stated that Treadway was experiencing increasingly paranoid delusions, and his escalating paranoia "extends to the medications themselves and fosters continued medication refusal."

¶22    Finally, Treadway argues that the State failed to offer testimony "as to why Treadway's negative opinion of medications should be disregarded other than Treadway's mental illness and deteriorating behavior." We reject the suggestion that WIS. STAT. § 51.61(1)(g)4.b. required the State to offer such testimony. The statute gives a patient the right to choose not to take medication only if the patient is competent to make that choice. *See Melanie L.*, 349 Wis. 2d 148, ¶78. Accordingly, "the court's determination should not turn on the person's choice to refuse to take medication; it should turn on the person's ability to process and apply the information available to the person's own condition before making that choice." *See id.* The evidence here therefore appropriately focused on Treadway's mental illness, his intellectual capacity, and the effect of those factors on his ability to make a connection between the risks and benefits of medication and his diagnosis of schizophrenia.

¶23    In sum, the record shows that the State presented clear and convincing evidence to prove the disputed components of WIS. STAT. § 51.61(1)(g)4.b. Because we are satisfied that the State satisfied its burden of proof, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.