STATE of Wisconsin, Plaintiff-Respondent,

v.

ANTHONY D.B., Defendant-Appellant-Petitioner.

Supreme Court

*No. 98–0576. Oral argument April 7, 2000.—Decided July 12, 2000.*

2000 WI 94

(Also reported in 614 N.W.2d 435.)

1

For the defendant-appellant-petitioner there were briefs and oral argument by *Ellen Henak*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Karen E. Timberlake*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

.

¶ 1. WILLIAM A. BABLITCH, J. Petitioner Anthony D.B. requests review of an unpublished decision of the court of appeals affirming an order of the circuit court. The circuit court found Anthony D.B., who had been committed as a sexually violent person pursuant to Wis. Stat. ch. 980 (1995–96),[1] not competent to refuse medication, and issued an order authorizing involuntary medication. The question presented is whether the circuit court had authority to issue such an order to an individual committed under ch. 980. Because those individuals committed under ch. 980 are defined as "patients" in Wis. Stat. § 51.61(1), we hold that the statutory provision in § 51.61(1)(g), authorizing a court to order medication regardless of the patient's consent, along with the relevant provisions of Wis. Stat. § 51.20, apply. The circuit court had statutory authority to issue its order and, accordingly, we affirm the decision of the court of appeals.

¶ 2. The facts in this case are not in dispute. In 1997 Anthony D.B. was committed as a sexually violent person pursuant to Wis. Stat. ch. 980. Anthony

---

[1] All references are to the 1995–96 volume of the statutes, unless noted otherwise.

D.B. previously had been convicted of second-degree sexual assault and sentenced to six years in prison. After the conviction for sexual assault, and before his ch. 980 commitment, Anthony D.B. was committed under Wis. Stat. § 971.17, as a person found not guilty by reason of mental disease or defect, to a non-sexual offense. As part of the § 971.17 commitment, an order was issued finding that Anthony D.B. was not competent to refuse medication.

¶ 3. Anthony D.B.'s Wis. Stat. ch. 980 placement was scheduled to occur after the expiration of his Wis. Stat. § 971.17 commitment, and the order for involuntary medication. In anticipation of the termination of the order for involuntary medication, the State filed a motion for a new involuntary medication order pursuant to Anthony D.B.'s ch. 980 commitment.

¶ 4. Milwaukee County Circuit Court Judge Timothy G. Dugan presided at a hearing on the State's motion. Doctor Martha Rolli testified that involuntary medication was necessary to protect Anthony D.B. from himself, and to protect others from him. According to Dr. Rolli, Anthony D.B. suffered from a mental disease and was dangerous when not medicated. She stated that if not on medication, Anthony D.B. became psychotic, aggressive, sexually focused, bites his own lip and refuses to eat or drink. Dr. Rolli further testified that Anthony D.B. would not take his medication unless ordered to do so. Dr. Rolli stated that Anthony D.B. did not understand the advantages and disadvantages of the medication, although she had attempted to explain these matters to him on numerous occasions. In Dr. Rolli's opinion, Anthony D.B. would appropriately be committed under Wis. Stat. ch. 51.

¶ 5. Anthony D.B. conceded that if the circuit court had the authority under Wis. Stat. ch. 980 to

order him involuntarily medicated, then Dr. Rolli's testimony established that he should be involuntarily medicated. However, Anthony D.B. argued that ch. 980 provides no independent authority for ordering involuntary medication. According to Anthony D.B., the State was required to initiate commitment proceedings under Wis. Stat. ch. 51 before seeking an order for involuntary medication.

¶ 6. In a written order issued in January 1998 Judge Dugan stated that the provisions of Wis. Stat. § 51.61 applied to individuals committed under Wis. Stat. ch. 980. Section 51.61(1)(g) provides a procedure for ordering involuntary medication of a patient under certain circumstances. Judge Dugan concluded that if the procedures in § 51.61(1)(g) are complied with, then the court that commits an individual pursuant to Wis. Stat. ch. 980 has the authority to order involuntary medication.

¶ 7. Anthony D.B. appealed, and the court of appeals affirmed. Subsequently, Anthony D.B petitioned this court for review pursuant to Wis. Stat. § (Rule) 808.10, which we granted.

¶ 8. The issue presented in this case is whether a court may issue an involuntary medication order for an individual committed pursuant to Wis. Stat. ch. 980. Resolution of this issue requires that we interpret ch. 980 and Wis. Stat. § 51.61 and the interaction of these provisions. Statutory interpretation is a question of law that we review de novo. *State v. Curiel*, 227 Wis. 2d 389, 404, 597 N.W.2d 697 (1999). The goal of statutory interpretation is to discern the intent of the legislature. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996).

I

¶ 9. As a preliminary matter, we note that it is undisputed by the parties that Anthony D.B. is mentally ill. The record indicates that Dr. Rolli testified to the circuit court that Anthony D.B. has schizophrenia. Other individuals committed under Wis. Stat. ch. 980 may not suffer from this type of disabling condition. Our conclusions in this case are limited to individuals committed pursuant to ch. 980 and who also suffer from a chronic mental illness such as schizophrenia.

¶ 10. Anthony D.B. asserts that neither Wis. Stat. ch. 980 nor Wis. Stat. § 51.61(1)(g) authorizes a court to issue an involuntary medication order for an individual committed under ch. 980. He contends that because ch. 980 does not include statutory provisions explicitly authorizing involuntary medication orders, the legislature unambiguously intended that such orders cannot be issued to individuals committed only under ch. 980. Anthony D.B. does not challenge here the propriety of his ch. 980 commitment. Instead, he contends that to obtain such an involuntary medication order, a Wis. Stat. ch. 51 commitment must be pursued in addition to the ch. 980 commitment. We disagree.

¶ 11. Our decision is guided by well-established rules of statutory interpretation. Wisconsin Stat. chs. 980 and 51 both govern individuals committed as sexually violent persons. When construing several statutes that deal with the same subject, it is our duty to give each provision full force and effect. *State v. Aaron D.*, 214 Wis. 2d 56, 66, 571 N.W.2d 399 (Ct. App. 1997). If two statutes that apply to the same subject are in conflict, the more specific controls. *Jones v. State*, 226 Wis. 2d 565, 576, 594 N.W.2d 738 (1999). Conflicts between statutes are not favored and will not be held to exist if

the statute may be reasonably interpreted otherwise. *Id.*

¶ 12. The underlying purpose for civil commitment, including commitment under Wis. Stat. ch. 980, " 'is to treat the individual's mental illness and protect him and society from his potential dangerousness.' " *State v. Post*, 197 Wis. 2d 279, 308, 541 N.W.2d 115 (1995) (quoting *Jones v. United States*, 463 U.S. 354, 368 (1983)). Chapter 980 is a civil commitment procedure enacted "to protect the public and to provide concentrated treatment to convicted sexually violent persons, not to punish the sexual offender." *State v. Carpenter*, 197 Wis. 2d 252, 258, 541 N.W.2d 105 (1995). This court has found treatment to be a "bona fide goal" of ch. 980. *Post*, 197 Wis. 2d at 308. Those who are determined to be sexually violent persons are committed for "control, care and treatment" from the state. Wis. Stat. § 980.06(1).

¶ 13. In upholding the constitutionality of Wis. Stat. ch. 980 in *Post*, we specifically concluded that individuals committed pursuant to ch. 980 are entitled to the patients' rights set forth in Wis. Stat. ch. 51. *Id.* at 309. Chapter 51 is the Mental Health Act and Wis. Stat. § 51.61 is Wisconsin's Patients' Rights Statute. Section 51.61(1) defines "patient" to include individuals committed under ch. 980. In *Post* we found that persons committed pursuant to ch. 980 are entitled to the rights set forth in Wis. Stat. § 51.61(1)(f). *Post*, 197 Wis. 2d at 309. Section 51.61(1)(f) provides that committed individuals "[h]ave a right to receive prompt and adequate treatment. . .appropriate for his or her condition. . . ." In ch. 51, "treatment" is defined as "psychological, educational, social, chemical, medical or somatic techniques designed to bring about rehabili-

8

tation of a mentally ill. . .person." Wis. Stat. § 51.01(17).

¶ 14. Although Anthony D.B. correctly points out that Wis. Stat. ch. 980 does not set forth specific procedures for involuntary medication, Wis. Stat. § 51.61(1)(g)3 provides in relevant part:

> Following a final commitment order,. . .[each patient shall] have the right to exercise informed consent with regard to all medication and treatment unless the committing court or the court in the county in which the individual is located. . .makes a determination, following a hearing, that the individual is not competent to refuse medication or treatment or unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the individual or others.

¶ 15. We conclude that the legislative intent in these statutes is to provide a statutory mechanism for the treatment of sexually violent persons. The legislature has provided that these individuals are to have the statutory rights under Wis. Stat. § 51.61, pursuant to the inclusion of individuals committed under Wis. Stat. ch. 980 in § 51.61(1). Section 51.61 provides patients with the right to make informed decisions regarding medication, except in those circumstances where, following a constitutionally sufficient procedure, the patient is determined to be not competent to refuse medication. Under these circumstances, § 51.61(1)(g) authorizes orders for involuntary administration of medication for individuals committed under ch. 980.

¶ 16. Anthony D.B. offers a number of arguments against this conclusion, none of which we find persuasive.

¶ 17. First, Anthony D.B. contends that the legislative history of Wis. Stat. § 51.61(1)(b) illustrates that

9

the legislature did not intend the medication provisions in Wis. Stat. § 51.61(1)(g) to apply to individuals committed under Wis. Stat. ch. 980. Anthony D.B. points out that Wis. Stat. ch. 51 originally applied only to individuals committed under ch. 51. Subsequently, the legislature amended § 51.61(1) to included individuals who are criminally committed or transferred under Wis. Stat. chs. 971 or 975. § 96, ch. 428, Laws of 1977. As a result of this amendment, the rights extended to patients civilly committed under ch. 51 were extended to patients who are criminally committed.

¶ 18.   In 1987 this court held that the Wis. Stat. § 51.61(1)(g) (1985–86) applied to individuals involuntarily committed under Wis. Stat. ch. 971. *State ex rel. Jones v. Gerhardstein*, 141 Wis. 2d 710, 745, 416 N.W.2d 883 (1987). Subsequently, the legislature repealed and re-created § 51.61(1)(g) in 1987 Wis. Act 366, § 18. The following session, separate involuntary medication provisions were enacted for those committed under ch. 971 and Wis. Stat. ch. 975. 1989 Wis. Act 334, § 5; 1989 Wis. Act 31, §§ 2854d, 2854h, 2885m.

¶ 19.   The conclusion Anthony D.B. draws from this history is that the legislature sought to limit the applicability of the Wis. Stat. ch. 51 medication provisions to those individuals committed under ch. 51. We are not persuaded.

¶ 20.   In our decision in *Post*, this court interpreted Wis. Stat. ch. 980 and explicitly stated that the patients' rights provisions of Wis. Stat. ch. 51 applied to persons committed under ch. 980. *Post*, 197 Wis. 2d at 309. "Having authoritatively construed a statute, well-established principles of judicial decision-making require that the chosen construction be maintained unless and until the legislature either amends or

10

repeals the statute." *Reiter v. Dyken*, 95 Wis. 2d 461, 470, 290 N.W.2d 510 (1980). Rather than a condemnation of using the ch. 51 procedures where involuntary medication orders are sought for those committed under ch. 980, we conclude that the legislative history supports the conclusion that the procedures in Wis. Stat. § 51.61 apply unless and until the legislature provides alternative provisions. To date the legislature has not elected to add specific involuntary medication provisions to ch. 980. Therefore the provisions of § 51.61(1)(g), and the relevant provisions in Wis. Stat. § 51.20, control involuntary medication orders for persons committed under this chapter.

¶ 21.   Next, Anthony D.B. argues that requiring a Wis. Stat. ch. 51 commitment to obtain an involuntary medication order comports with the logic of *State ex rel. Roberta S. v. Waukesha County Human Services Department*, 171 Wis. 2d 266, 491 N.W.2d 114 (Ct. App. 1992) and *K.N.K. v. Buhler*, 139 Wis. 2d 190, 407 N.W.2d 281 (Ct. App. 1987). Each of these cases involve the interpretation of Wis. Stat. ch. 55. Chapter 55 "provides for the protective placement of an individual for the primary purpose of providing care and custody following a determination of incompetency in accordance with ch. 880, Stats." *K.N.K.*, 139 Wis. 2d at 197. We agree with the State that the holdings in *Roberta S.* and *K.N.K.* are limited to the statutory provisions at issue in each case.

¶ 22.   In *Roberta S.*, the court of appeals held that an order for guardianship and protective services under Wis. Stat. ch. 880 did not authorize forcible administration of psychotropic medications. *Roberta S.*, 171 Wis. 2d at 274. At the time *Roberta S.* was decided, Wis. Stat. § 880.33 (1991–92) authorized a court to appoint a guardian for the purpose of con-

11

senting to or refusing psychotropic medication, but the statute did not specifically provide that the guardian may be authorized to consent to forcible administration of medication to the ward.[2] *Id.* at 275. The court of appeals concluded that the statutory guardianship did not authorize the involuntary medication of a ward who refused to take medication. *Id.* at 274. The court of appeals held that "an order for forcible administration of psychotropic medication may only be issued in a ch. 51, Stats., proceeding after a finding has been made of dangerousness because of recent acts or omissions." *Id.* at 277–78. It concluded that a separate Wis. Stat. ch. 51 proceeding would need to be brought if forcible administration of medications was determined to be necessary. *Id.* at 278.

¶ 23. The State correctly points out that in *Roberta S.*, the court of appeals did not consider whether either Wis. Stat. chs. 55 or 880 had treatment as a primary purpose. In addition *Roberta S.* did not consider whether Wis. Stat. § 51.61(1) applied to individuals receiving protective services under ch. 55 and did not note that § 51.61(1) includes individuals committed under ch. 55 in the definition of "patient." Additionally, the statute at issue in *Roberta S.* established a mechanism for obtaining the consent or refusal of medication, but did not address involuntary medication. As a result, the court of appeals construed the statute to exclude such provisions. That is not our case. Wisconsin Stat. ch. 980 contains no provision for invol-

---

[2] Following the decision in *State ex rel. Roberta S. v. Waukesha County Human Services Department*, 171 Wis. 2d 266, 491 N.W.2d 114 (Ct. App. 1992), the legislature amended Wis. Stat. ch. 880 to allow a court to give a guardian this authority under certain circumstances. 1993 Wis. Act. 316, § 8.

untary medication. Therefore, the provisions of Wis. Stat. ch. 51 apply.

¶ 24. In *K.N.K.*, the court of appeals also considered the propriety of a court order for involuntary medication of an individual who is under an order for protective placement pursuant to Wis. Stat. ch. 55. The court of appeals noted that Wis. Stat. § 55.07 provided that the patients' rights set forth in Wis. Stat. § 51.61 (1985–86) applied to those committed under ch. 55. *K.N.K.*, 139 Wis. 2d at 205. The court of appeals examined § 51.61 and concluded that it permitted an order for the involuntary administration of medication prior to the final commitment order, but provided no authority for such an order to be entered following a protective placement. *Id.* at 205–06. The court of appeals concluded that the circuit court's order to involuntary medicate, issued subsequent to the protective placement order, was without basis in statute and therefore ineffective. *Id.* at 206. Wisconsin Stat. § 51.61(1)(g) was subsequently interpreted by our decision in *Gerhardstein* and revised by the legislature to address post-commitment rights. Wis. Stat. § 51.61(1)(g)3. The *K.N.K.* decision illustrates the necessity for statutory authority to issue an order for involuntary medication. We conclude that this authority is found in reading Wis. Stat. ch. 980 together with § 51.61.

¶ 25. Finally, Anthony D.B. contends that amendments adopted in 1997 Wis. Act. 284 to Wis. Stat. ch. 980 support his position. These amendments address pharmacological treatment using an antiandrogen of the individuals who are "serious child sex offenders."[3] According to Anthony D.B., if the legisla-

---

[3] A "serious child sex offender" as defined by 1997 Wis. Act 284, § 4:

ture intended that an order for involuntary medication could be issued under ch. 980, then this 1997 amendment addressing antiandrogen would be unnecessary. The 1997 amendment, as the State points out, does not address the situation presented by individuals such as Anthony D.B., who are diagnosed as schizophrenic, need medication, and are not competent to refuse medication. Providing a specific plan for child sex offenders does not erode the conclusion that the court has the authority under Wis. Stat. § 51.61(1)(g) to address the need of an individual such as Anthony D.B.

¶ 26.    We hold that the rights and procedures in Wis. Stat. § 51.61 for involuntary medication apply in this case. The circuit court issued its order pursuant to the procedure outlined under Wis. Stat. § 51.61(1)(g)3. The initial order of the circuit court, therefore, was properly issued.

II

¶ 27.    Having concluded that the involuntary medication order was grounded upon the statutory authority in Wis. Stat. ch. 980 and Wis. Stat. § 51.61, we turn to consider the procedure for review of that order. Patients have a liberty interest under the Due Process Clause of the Fourteenth Amendment in avoiding the involuntary administration of drugs. *Enis v. Department of Health and Soc. Serv.*, 962 F.Supp.

means a person who has been convicted, adjudicated delinquent or found not guilty or not responsible by reason of insanity or mental disease, defect or illness for committing a violation of a crime specified in s. 948.02(1) or (2) [sexual assault of a child] or 948.025(1) [engaging in repeated acts of sexual assault of the same child] against a child who had not attained the age of 13 years.

1192, 1197 (W.D. Wis. 1996). As a result, due process requires regular review of the involuntary medication order. *Id.* at 1201.

¶ 28. Wisconsin Stat. § 51.61(1)(g) does not specifically set forth a procedure for the regular review of involuntary medication orders. Anthony D.B. points out that civil commitments ordered under Wis. Stat. ch. 51 expire and must necessarily be reevaluated. As a result, an order for the involuntary medication of a person committed under ch. 51 expires and is reevaluated during the procedures for involuntary commitment for treatment set forth in Wis. Stat. § 51.20.

¶ 29. In contrast, commitments under Wis. Stat. ch. 980 do not expire at a specific time. Instead, a periodic review of the person's status is conducted at least once every 12 months. Wis. Stat. § 980.07(1). This review is undertaken to determine if the person committed under ch. 980 "has made sufficient progress to be entitled to transfer to a less restrictive facility, to supervised release or to discharge." *Id.* The State suggests that this periodic reexamination of commitments, combined with the court's authority to order reexamination of the committed individual under Wis. Stat. § 980.07(3), and the individual's right to petition the court for supervised release under Wis. Stat. § 980.08, provides sufficient opportunity for review of the involuntary medication order.

¶ 30. In *Washington v. Harper*, 494 U.S. 210, 232–33 (1990) the Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require the decision to involuntarily medicate a prison inmate to be made by the judiciary if adequate alternative procedures exist. *Id.* at 231–33. The Court examined a policy

15

for involuntary treatment with drugs developed by the Washington Department of Corrections Special Offender Center. The policy:

> requires that the decision whether to medicate an inmate against his will be made by a hearing committee composed of a psychiatrist, a psychologist, and the Center's Associate Superintendent. None of the committee members may be involved, at the time of the hearing, in the inmate's treatment or diagnosis; members are not disqualified from sitting on the committee, however, if they have treated or diagnosed the inmate in the past. The committee's decision is subject to review by the Superintendent; if the inmate so desires, he may seek judicial review of the decision in a state court.

*Id.* at 229. Of particular importance to the Court was the independence of the decision maker in the Washington policy. *Id.* at 233. In contrast, periodic reexamination under Wis. Stat. § 980.07 does not contain any specific provision requiring an independent evaluation of an involuntary medication order. Although under § 980.07(2) a report of the examination is to be filed with the court that ordered the commitment, we conclude that due process requires an independent review of the medical order in the first instance as well.

¶ 31.  The periodic review of an individual's commitment provided under Wis. Stat. § 980.07 should be read together with Wis. Stat. § 51.61(1)(g) and with the judicial holdings requiring, as a matter of due process, the regular review of involuntary medication orders. We determine here that as part of the annual review under § 980.07, an involuntary order for medication must also be reviewed. To insure that this review is

16

independent, the procedure for the subsequent review of an involuntary medication order is the same procedure followed to obtain the initial order, § 51.61(1)(g). Section 51.61(1)(g) is the statutory mechanism provided by the legislature that both explicitly addresses issuance of involuntary treatment order and that clearly applies to individuals committed under Wis. Stat. ch. 980.

¶ 32.  Three points are essential to the implementation of this review process. First, we note that the statutory provisions for issuing an involuntary medication order under Wis. Stat. § 51.61(1)(g), explicitly provide that a hearing must be held in compliance with the procedures set forth in Wis. Stat. § 51.20(5). Under § 51.20(5), a hearing must be conducted in conformance with the "essentials of due process and fair treatment," including rights such as a right to counsel, to an open hearing with the ability to request a closed hearing, the right to remain silent and the right to present and cross-examine witnesses. Wis. Stat. § 51.20(5). The only right set forth in § 51.20(5) that is inapplicable to a proceeding involving a medication order is the right to a jury trial. Wis. Stat. § 51.61(1)(g)3.

¶ 33.  Second, we conclude that Wis. Stat. § 51.61(1)(d) allows individuals committed under Wis. Stat. ch. 980, and subject to an involuntary medication order under Wis. Stat. § 51.61(1)(g), to petition the court for review of that medication order. Section 51.61, set forth in relevant part below,[4] gives patients the right to petition the court for review of the commit-

_____

[4] Wisconsin Stat. 51.61(1)(d) states in part that each patient shall "have the right to petition the court for review of

17

ment order using the procedures provided in Wis. Stat. § 51.20(16). Because those committed under ch. 980 are patients, as defined in § 51.61(1), and because the order for involuntary medication is specifically issued pursuant to § 51.61(1)(g), the right to petition for judicial review of that medication order under § 51.61(1)(d) applies.

¶ 34. Third, we conclude an order for the involuntary medication of a Wis. Stat. ch. 980 patient expires unless it receives the appropriate periodic review.

¶ 35. "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Harper*, 494 U.S. at 229. To the extent there is some additional right for the patient in Wis. Stat. § 51.20 that is clearly relevant to an order for involuntary medication, such as a request to modify the order for medication brought under Wis. Stat. § 51.20(16), a court, reviewing the application of such an order to an individual committed under Wis. Stat. ch. 980, should assure that the patient's rights and liberty are protected.

¶ 36. In sum, we conclude that Wis. Stat. ch. 980 and Wis. Stat. ch. 51 provide the statutory basis for a court to issue an involuntary medication order for individuals committed pursuant to ch. 980.

*By the Court.*—The decision of the court of appeals is affirmed.

the commitment order or for withdrawal of the order or release from commitment as provided in s. 51.20(16)."