COURT OF APPEALS
DECISION
DATED AND FILED

October 1, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP722-CR**

Cir. Ct. No. **2023CF1417**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

N.K.B.,

      DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Reversed*.

Before Donald, P.J., Geenen and Colón, JJ.

¶1 GEENEN, J. Naomi[1] appeals from an order of the circuit court committing her to the custody of the Department of Health Services ("DHS") and

---

[1] For ease of reading and to protect the confidentiality of these proceedings, we use the pseudonym "Naomi" to refer to the defendant in this case.

permitting the involuntary administration of medication under WIS. STAT. § 971.14 (2021-22)[2] because she was dangerous to herself or others if not medicated (the "involuntary medication order"). She argues that under § 971.14, incompetent criminal defendants cannot be involuntarily medicated based on a finding of dangerousness.

¶2 For the reasons set forth below, we agree with Naomi. Accordingly, we reverse and direct the circuit court to vacate the involuntary medication order.

## BACKGROUND

¶3 On January 27, 2023, Naomi allegedly struck a nurse and kicked a law enforcement officer in the shin while at a psychiatric hospital. The following day, the State charged Naomi with misdemeanor battery and obstructing an officer. Naomi's competency to proceed was raised at her first hearing, and an examination was ordered. On March 7, 2023, the circuit court found Naomi incompetent to proceed and ordered commitment for treatment at Mendota Mental Health Institute ("Mendota"). Despite this order, Naomi was still in Milwaukee County jail three weeks later when she allegedly slapped a nurse dispensing medications. Naomi was charged with felony battery by a prisoner under WIS. STAT. § 940.20(1). On April 4, 2023, at her first hearing on the felony charge, the circuit court ordered a competency evaluation report and scheduled a competency hearing for two weeks after the report was filed.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      Prior to the competency hearing for the felony case, on April 14, 2023, DHS requested an involuntary medication order from the circuit court and included a report and individualized treatment plan by Mendota psychiatrist Dr. Kevin Murtaugh.  Dr. Murtaugh opined in his report that, in addition to being necessary for Naomi to regain competency, "involuntary administration of medication(s) and treatment is needed because [Naomi] poses a current risk of harm to self or others if not medicated or treated[.]"  Three days later, on April 17, 2023, psychologist Jenna M. Krickeberg filed a competency evaluation report which opined that Naomi was incompetent to proceed.

¶5      On April 26, 2023, the circuit court held a contested competency hearing at which Dr. Krickeberg and Dr. Murtaugh testified.[3]  Dr. Krickeberg testified that Naomi suffers from a mental illness and was incompetent to stand trial because she lacked the capacity to aid, assist, or cooperate with counsel, to understand counsel's role and court proceedings, and to understand the gravity of the charges against her.  Dr. Krickeberg recommended that Naomi receive inpatient treatment at Mendota and concluded that, with medication and treatment, there is a substantial likelihood that Naomi would regain competency within the statutory time frame.  The circuit court found that Dr. Krickeberg's testimony and report established that Naomi was incompetent to proceed and concluded that the likelihood of Naomi attaining competence would be "far more likely" with medication.

---

[3] The circuit court initially held a competency hearing on April 20, 2023, but because Naomi contested the reports, the hearing was adjourned and rescheduled for a contested competency hearing.

3

¶6      Dr. Murtaugh then testified about the involuntary medication request.  According to his testimony, Naomi suffered from a mental illness which is treatable with psychiatric medications.  He recommended two antipsychotic medications:  Quetiapine to be administered orally (100-800mg total per day), or Haloperidol to be administered by injection (5-20mg total per day).[4]  He recommended Haloperidol be administered by injection only if oral administration of Quetiapine was refused.  He discussed the side effects of each medication and Naomi's physical health conditions.  He stated that there were no less intrusive alternatives to involuntarily administering medication, and he observed that although Naomi had a history of doing well while taking Quetiapine, there was no injectable form of that medication should Naomi refuse to take it orally.

¶7      Dr. Murtaugh testified that he attempted to discuss the advantages, disadvantages, and alternatives of medications with Naomi on three occasions, but Naomi responded each time without meaningful engagement, "some smatterings of profanity and just being asked to leave her alone."  He opined that the medication would have a substantial likelihood of rendering Naomi competent and concluded that Naomi was not competent to refuse because she could not express an understanding of the risks and benefits of medication.

¶8      On April 27, 2023, the circuit court granted DHS's request and ordered involuntary medication.  The circuit court analyzed the factors set forth in

---

[4] In addition to these antipsychotic medications, Dr. Murtaugh also recommended Lorazepam to be administered orally (2-6mg total per day to "reduce agitation/anxiety/treat mania") or by injection if oral administration was refused (2-4mg total per day to "reduce agitation/anxiety").

*Sell v. United States*, 539 U.S. 166, 180-81 (2003),[5] and it concluded that they had been satisfied. In doing so, the circuit court stated that it was guided by WIS. STAT. § 51.61(1)(g).

¶9 On April 27, 2023, Naomi filed a notice of appeal and a motion to stay the involuntary medication order. The circuit court then scheduled a supplemental hearing for May 4, 2023, and granted a stay until that date. DHS wrote a letter to the circuit court asking that it reconsider its stay decision because, it alleged, Naomi was a danger to herself and others. Naomi responded, arguing that the circuit court was not authorized to order involuntary medication of an incompetent defendant based on dangerousness, and that in order to do so, the State needed to commence WIS. STAT. ch. 51 proceedings.

¶10 At the May 4, 2023 hearing, the circuit court explained that it had used an older version of the CR-206 standard form order when it issued the involuntary medication order.[6] Based upon a review of the September 2022 version of the standard order and referencing WIS. STAT. § 971.14(2)(f), the circuit court concluded that dangerousness was an alternative standard separate from the

---

[5] In *Sell v. United States*, 539 U.S. 166, 180-81 (2003), the Supreme Court declared that, before forcibly medicating an accused person to competency to stand trial, the State must show that: (1) the government has an important interest in proceeding to trial; (2) involuntary medication will significantly further the governmental interest; (3) involuntary medication is necessary to further the governmental interest; and (4) involuntary medication is medically appropriate.

[6] The CR-206 standard form order is intended for use in commitments under WIS. STAT. § 971.14(5) and involuntary medication orders of those committed under that statute.

*Sell* factors that could be used to order involuntary medication.[7] The circuit court believed that the State should be given an opportunity to pursue this alternative dangerousness standard and allowed Mendota psychiatrist Dr. Candace Cohen to testify.

¶11    Dr. Cohen testified that Naomi's records indicated that "since April 17th," Naomi threatened and carried out numerous acts that substantially risked serious physical harm to others. She explained that these behaviors are consistent with Naomi's mental illness. Dr. Cohen confirmed that there had been "discussions at a higher level" of initiating a WIS. STAT. ch. 51 commitment, but she did not know why it had not been pursued. Dr. Cohen opined that an involuntary medication order would be in Naomi's best interest because Naomi's "thoughts and behaviors will become clearer and hopefully [Naomi] would be willing to take the medications which would definitely treat her medical condition and, therefore, she could stabilize and do better medically."

¶12    The State argued that *Sell* discussed dangerousness as an alternative basis to involuntarily medicate an incompetent defendant. According to the State, if the basis for involuntary medication is the defendant's dangerousness, the *Sell*

_____

[7] The CR-206 form used for the April 27, 2023 involuntary medication order was the November 2019 version of the form that appears to have combined the *Sell* factors and a finding of dangerousness into a single check-box. That is, if a circuit court was granting the involuntary medication order using the November 2019 version of the CR-206 form, it was necessarily finding the *Sell* factors satisfied *and* that the defendant was dangerous. However, the September 2022 version of the CR-206 form used for the May 4, 2023 involuntary medication order gives two routes of ordering involuntary medication: (1) by finding the defendant is dangerous, or (2) by finding the *Sell* factors satisfied.

Given the way the September 2022 version of the CR-206 form is structured, the circuit court's conclusion that dangerousness was an alternative standard separate from the *Sell* factors that could be used to order involuntary medication in this case is entirely understandable and a predictable consequence of structuring the form in this way.

factors do not apply, and the court should instead proceed under *Washington v. Harper*, 494 U.S. 210 (1990). Naomi argued that *Sell*'s discussion of whether involuntary medication can be justified on alternative grounds such as dangerousness did not create or recognize a separate standard, but instead, it referred to the alternative statutory authority existing in each state, such as chapter 51 in Wisconsin.

¶13 The circuit court granted the request for involuntary medication and issued an oral decision. The circuit court believed that in *Harper* and *Sell*, the Supreme Court authorized the courts to involuntarily medicate incompetent defendants based on a finding of dangerousness. Referencing *Sell*'s observation that there are "often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds before turning to the trial competence question," the circuit court concluded that "the *Sell* Court clearly carves out a different treatment where it is believed that a person in custody is dangerous to him or herself or others."

¶14 The circuit court stated that "the analysis set forth in *Washington v. Harper* actually is the analysis that applies here because ... dangerousness ... is the main issue[.]" The circuit court then analyzed the facts and granted the "request to order involuntary administration of medication on grounds of dangerousness under section three of the standard form, which again is CR-206." The circuit court made clear that the involuntary medication order was "not under the *Sell* factors" because "the *Sell* factors do not apply here."

¶15 On May 5, 2023, the circuit court recalled the case to supplement its oral decision. The circuit court agreed that WIS. STAT. ch. 51 was a potential avenue that the State could take to obtain an involuntary medication order based

on Naomi's dangerousness, but it concluded that it had independent authority to order involuntary medication based on dangerousness under *Harper* and *Sell*, and the applicable Wisconsin statutes; a written order followed.

¶16    Naomi appeals the involuntary medication order.[8]

## DISCUSSION

¶17    In resolving this appeal, we assume without deciding that Naomi was both mentally ill and a danger to herself or others. We also observe that the circuit court explicitly stated that the involuntary medication order was not being issued under the *Sell* factors, even though it had previously made findings under the *Sell* factors, so we do not discuss whether the State satisfied the *Sell* factors. The sole question is whether the circuit court had the authority—statutory or otherwise—to order Naomi involuntarily medicated based on its finding that she was dangerous and without applying the *Sell* factors. Answering this question requires us to interpret statutes and determine whether Naomi's due process rights

---

[8] The State highlights that this case is moot because Naomi is no longer subject to the involuntary medication order, but it concedes that this case meets at least one of the exceptions to the mootness doctrine. Generally speaking, courts "will not consider a question the answer to which cannot have any practical effect upon an existing controversy." *State v. Leitner*, 2002 WI 77, ¶13, 253 Wis. 2d 449, 646 N.W.2d 341. Nonetheless, we recognize exceptions to this general rule where a case presents an issue that:

> (1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.

*Outagamie Cnty. v. Melanie L.*, 2013 WI 67, ¶80, 349 Wis. 2d 148, 833 N.W.2d 607 (citation omitted); *see also* *Leitner*, 253 Wis. 2d 449, ¶14. We agree with the State that one or all of these exceptions apply to the issues presented in this case.

were violated, both of which present issues of law that we review *de novo*. *State v. McGuire*, 2010 WI 91, ¶26, 328 Wis. 2d 289, 786 N.W.2d 227; *State v. Anthony D.B.*, 2000 WI 94, ¶8, 237 Wis. 2d 1, 614 N.W.2d 435.

¶18    The State argues that the circuit court had statutory authority to base its order on dangerousness because WIS. STAT. § 51.61(1)(g)1. and 3. apply to individuals committed under WIS. STAT. § 971.14 without the need for additional commitment under WIS. STAT. ch. 51.  The State says that the Supreme Court decisions relied upon by the circuit court reaffirm that due process is not violated for involuntarily medicating defendants committed under § 971.14 based on dangerousness, so long as the order is medically appropriate, based on a mentally ill person's dangerousness in a confined setting, and supported by adequate process such as that afforded by the involuntary medication procedures in § 51.61(1)(g)1. and 3.[9]

¶19    Naomi argues that *Harper* and *Sell* did not create or recognize a separate standard on which to base an involuntary medication order, but rather, were referring to alternative statutory bases for involuntary medication under states' laws, such as WIS. STAT. ch. 51.  Naomi argues that § 51.61(1)(g)1. and 3. do not apply to defendants committed under WIS. STAT. § 971.14 because § 971.14 has its own involuntary medication provision which contemplates involuntary medication only for the purpose of rendering a defendant competent to

---

[9] It is unclear whether the State agrees with the circuit court that *Harper* and *Sell* recognized an independent judicial basis for ordering involuntary medication based on dangerousness that would not require any grounding in statutory authority (i.e., statutory authority authorizing dangerousness as a basis for involuntary medication).  For both completeness and because this theory was the basis of the circuit court's reasoning, we address the argument.

stand trial, and it does not authorize involuntary medication based on a defendant's dangerousness.

¶20 We agree with Naomi that the Supreme Court cases relied upon by the circuit court do not create an independent judicial authority to involuntarily medicate defendants committed under WIS. STAT. § 971.14 based on dangerousness, and WIS. STAT. § 51.61(1)(g)1. and 3. do not apply to incompetent defendants committed under § 971.14. Defendants committed under § 971.14 cannot be involuntarily medicated based on dangerousness absent the commencement of proceedings under ch. 51 or some other statute that authorizes involuntary medication based on the defendant's dangerousness. Any request for involuntary medication due to dangerousness would then be made in the parallel proceedings and not under § 971.14. The request would not be subject to the *Sell* factors because the involuntary medication is being requested for a purpose other than rendering the defendant competent to stand trial.

¶21 Here, no parallel proceedings were commenced against Naomi. The only statute under which she was committed was WIS. STAT. § 971.14, and the applicable involuntary medication procedure in § 971.14(3)(dm) and (4)(b) does not authorize a circuit court to order involuntary medication based on Naomi's dangerousness.

I.    **The Supreme Court did not create an independent judicial basis for involuntarily medicating defendants committed under WIS. STAT. § 971.14 based on the defendant's dangerousness.**

¶22 In support of its involuntary medication order, the circuit court read *Harper* and *Sell* as establishing an independent judicial basis for involuntarily medicating Naomi based on its finding that she was mentally ill and dangerous. The State also appears to argue that the circuit court's involuntary medication

10

order can be upheld based on these cases and the due process protections that Naomi actually received (e.g., a contested hearing with the assistance of counsel). We disagree that these cases stand for the proposition that a court may order involuntary medication of an incompetent defendant committed under WIS. STAT. § 971.14 based on dangerousness without grounding that order in some other Wisconsin statutory authority that specifically authorizes dangerousness as a basis for involuntary medication.

¶23　Under the Fifth and Fourteenth Amendments, Naomi has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *State v. Fitzgerald*, 2019 WI 69, ¶13, 387 Wis. 2d 384, 929 N.W.2d 165 (quoting *Harper*, 494 U.S. at 221). If the government seeks an involuntary medication order during criminal competency proceedings, the goal of that order is limited to "rendering the defendant *competent to stand trial*." *Sell*, 539 U.S. at 181 (emphasis in original).

¶24　In *Sell*, the Supreme Court declared that, before forcibly medicating an accused person to competency to stand trial, the State must show that: (1) the government has an important interest in proceeding to trial; (2) involuntary medication will significantly further the governmental interest; (3) involuntary medication is necessary to further the governmental interest; and (4) involuntary medication is medically appropriate. *Sell*, 539 U.S. at 180-81. In setting forth this standard, the Court observed:

> A court need not consider whether to allow forced medication for [competency to stand trial], if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his [or her] health gravely at risk. There are often strong reasons for a court to determine whether forced administration of drugs can be

11

> justified on these alternative grounds *before* turning to the trial competence question.

*Sell*, 539 U.S. at 181-82 (emphasis in original; citation omitted). *Harper* held that

> given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his [or her] will, if the inmate is dangerous to himself [or herself] or others and the treatment is in the inmate's medical interest.

*Harper*, 494 U.S. at 227. The Court in *Harper* upheld a Washington statute as constitutional given the law's procedural and substantive protections.[10] *Id.* at 225-26.

¶25 We conclude that *Sell*'s reference to "alternative grounds" for involuntary medication references state statutory schemes authorizing forced medication for purposes other than rendering the defendant competent to stand trial. *Harper* discusses what process is due constitutionally before a defendant may be involuntarily medicated based on his or her dangerousness. In *Harper*, it was the Washington statute under review, not independent judicial authority, which allowed the court to order involuntary medication. *Id.*, 494 U.S. at 215-16.

¶26 Likewise, in Wisconsin, statutory authority is necessary to issue an order for involuntary medication. *Anthony D.B.*, 237 Wis. 2d 1, ¶24 (explaining that our decision in *K.N.K. v. Buhler*, 139 Wis. 2d 190, 407 N.W.2d 281 (Ct. App.

---

[10] In *Riggins v. Nevada*, 504 U.S. 127, 135 (1992), the Court extended *Harper* to the pretrial confinement setting: "[u]nder *Harper*, forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness. The Fourteenth Amendment affords at least as much protection to persons the State detains for trial." *See State v. Wood*, 2010 WI 17, ¶22, 323 Wis. 2d 321, 780 N.W.2d 63 (discussing *Riggins*).

1987) "illustrates the necessity for statutory authority to issue an order for involuntary medication"). Nothing in *Harper* or *Sell* implies that a court may order involuntary medication based on dangerousness when a state requires statutory authority to issue such orders and has set forth specific procedures for doing so in other statutory provisions.

¶27 *Sell* simply acknowledges the existence of alternative grounds to order involuntary medication and instructs courts to explore those grounds *before* turning to the trial competence question. If the *Sell* Court intended to authorize or recognize an independent judicial basis to order involuntary medication based on dangerousness of an incompetent defendant subject to pretrial commitment, despite the fact that state statutes already exist governing the process, it would have said so explicitly. Instead, it said the opposite, explaining that "courts, *in civil proceedings*, may authorize involuntary medication where the patient's failure to accept treatment threatens injury to the patient or others." *Id.*, 539 U.S. at 182 (emphasis added).

¶28 Accordingly, *Harper* and *Sell* did not supply the circuit court with authorization to issue the involuntary medication order against Naomi based on her dangerousness and without applying the *Sell* factors. Such authority must derive from our statutes. *Anthony D.B.*, 237 Wis. 2d 1, ¶24.

## II. WISCONSIN STAT. § 51.61(1)(g)1. and 3. do not apply to incompetent defendants committed under WIS. STAT. § 971.14.

¶29 Having concluded that *Harper* and *Sell* did not authorize the involuntary medication order in this case, we now turn to whether the order was supported by statutory authority. Specifically, we consider whether WIS. STAT. § 51.61(1)(g)1. and 3. apply to Naomi. If the involuntary medication provisions

contained in those subsections apply here, Naomi can be involuntarily medicated based on her dangerousness without consideration of the *Sell* factors.

¶30    The State argues that WIS. STAT. § 51.61(1)(g)1. and 3. apply to Naomi because she is a "patient" under § 51.61(1),[11] and subsections 1. and 3. allow a circuit court to order involuntary medication based on the patient's dangerousness.   Section 51.61(1)(g)1. grants patients "the right to refuse all medication and treatment except ... in a situation in which the medication or treatment is necessary to prevent serious physical harm to the patient or to others." Section 51.61(1)(g)3. grants patients the right to "exercise informed consent with regard to all medication and treatment ... unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the individual or others."   The State says that these subsections apply to Naomi without the need for additional commitment under ch. 51, relying primarily on *Anthony D.B.*

¶31    We disagree with the State.   Indeed, *Anthony D.B.* compels the opposite conclusion.   In *Anthony D.B.*, our supreme court concluded that the right to informed consent and involuntary medication provision in WIS. STAT. § 51.61(1)(g)3. applied to individuals committed under WIS. STAT. ch. 980. *Anthony D.B.*, 237 Wis. 2d 1, ¶¶15, 26.   It observed that, in a prior case, it determined that individuals committed under ch. 980 were entitled to all of the patients' rights set forth in ch. 51.   *Anthony D.B.*, 237 Wis. 2d 1, ¶13 (citing *State*

---

[11] As relevant here, WIS. STAT. § 51.61(1) defines "patient" as "any individual who is receiving services for mental illness ... including any individual ... who is detained, committed or placed under this chapter or [WIS. STAT.] ch. ... 971[.]"

*v. Post*, 197 Wis. 2d 279, 309, 541 N.W.2d 115 (1995)).  Chapter 980 did not set forth specific procedures for involuntary medication, but § 51.61(1)(g) did:

> Following a final commitment order, ... [each patient shall] have the right to exercise informed consent with regard to all medication and treatment unless the committing court or the court in the county in which the individual is located ... makes a determination, following a hearing, that the individual is not competent to refuse medication or treatment or unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the individual or others.

*Anthony D.B.*, 237 Wis. 2d 1, ¶14 (quoting § 51.61(1)(g)3. (1995-96)) (alterations in original).  The court concluded that because the legislature provided individuals committed under ch. 980 all statutory rights under § 51.61, Anthony D.B. had "'the right to exercise informed consent with regard to all medication and treatment … unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm'" to himself or others.  *Anthony D.B.*, 237 Wis. 2d 1, ¶¶14-15 (citation omitted).

¶32     In support of its conclusion, the supreme court discussed the legislative history of WIS. STAT. § 51.61(1)(g):

> In 1987 this court held that WIS. STAT. § 51.61(1)(g) (1985-86) applied to individuals involuntarily committed under WIS. STAT. ch. 971. *State ex rel. Jones v. Gerhardstein*, 141 Wis. 2d 710, 745, 416 N.W.2d 883 (1987).  Subsequently, the legislature repealed and re-created § 51.61(1)(g) in 1987 Wis. Act 366, § 18.  The following session, separate involuntary medication provisions were enacted for those committed under ch. 971 and WIS. STAT. ch. 975.

*Anthony D.B.*, 237 Wis. 2d 1, ¶18.

¶33     Unlike WIS. STAT. ch. 971 and 975, the legislature did not create in WIS. STAT. ch. 980 a separate involuntary medication provision.  However,

because individuals committed under ch. 980 were indisputably "patients" for purposes of WIS. STAT. § 51.61,[12] the supreme court concluded that individuals committed under ch. 980 can be involuntarily medicated "to prevent serious physical harm" to themselves or others under § 51.61(1)(g)3. It held:

> Rather than a condemnation of using the ch. 51 procedures where involuntary medication orders are sought for those committed under ch. 980, we conclude that the legislative history supports the conclusion that the procedures in [§] 51.61 apply unless and until the legislature provides alternative provisions. To date the legislature has not elected to add specific involuntary medication provisions to ch. 980. Therefore the provisions of § 51.61(1)(g), and the relevant provisions in WIS. STAT. § 51.20, control involuntary medication orders for persons committed under [ch. 980].

*Anthony D.B.*, 237 Wis. 2d 1, ¶20. The court rejected Anthony D.B.'s argument that the State was required to pursue a ch. 51 commitment in addition to the ch. 980 commitment in order to obtain an involuntary medication order. *Anthony D.B.*, 237 Wis. 2d 1, ¶10.

¶34 *Anthony D.B.* makes clear that the involuntary medication provisions in WIS. STAT. § 51.61(1)(g)1. and 3. apply to patients only if the legislature has not provided an "alternative provision[]." *Anthony D.B.*, 237 Wis. 2d 1, ¶20. Unlike WIS. STAT. ch. 980, in WIS. STAT. § 971.14(3)(dm) and (4)(b), the legislature created a separate, alternative involuntary medication procedure and these statutes do not authorize involuntary medication based on an individual's dangerousness.

---

[12] Like individuals committed under WIS. STAT. ch. 971, individuals committed under WIS. STAT. ch. 980 are also defined by WIS. STAT. § 51.61(1) as "patients."

¶35    Moreover, at the time *State ex rel. Jones v. Gerhardstein* was decided (holding that the involuntary medication provisions of WIS. STAT. § 51.61(1)(g) applied to incompetent defendants committed under WIS. STAT. ch. 971), ch. 971 did not require that a court find that the defendant was not competent to refuse medication before it could order involuntary medication. *Jones*, 141 Wis. 2d 710, 745, 416 N.W.2d 883 (1987) *recognized as superseded by statute in Anthony D.B.*, 237 Wis. 2d 1, ¶20; *compare* WIS. STAT. § 971.14 and 971.17 *with* § 971.14 and 971.17 (1985-86). Defendants committed under ch. 971 were being forcibly medicated without having first "been adjudged incompetent to refuse drugs." *Jones*, 141 Wis. 2d at 721. As it does today, § 51.61(1) (1985-86) defined individuals committed under ch. 971 as "patients." *Compare* § 51.61(1) *with* § 51.61(1) (1985-86). The *Jones* court held that in order to correct the "constitutional infirmity" manifest in involuntarily medicating individuals committed under ch. 971 without a finding that they are incompetent to refuse medication, it would apply "the procedures and standards set forth in the first five sentences" of § 51.61(1)(g). *Jones*, 141 Wis. 2d at 745. The court concluded that under § 51.61(1)(g), defendants committed under ch. 971 could not be forcibly medicated unless a court found the defendant incompetent to refuse medication or "where such administration '[was] necessary to prevent serious physical harm to the patient or to others[.]'" *Jones*, 141 Wis. 2d at 745 (citation omitted).

¶36    Seemingly in direct response to *Jones*, the legislature repealed and re-created WIS. STAT. § 51.61(1)(g), and in the following session, separate involuntary medication provisions were enacted for individuals committed under WIS. STAT. ch. 971. Dangerousness was not included as a basis for ordering involuntary medication. Section 971.14(4)(b) (1989-90) was amended to state:

> If the defendant is found incompetent and if the [S]tate proves by evidence that is clear and convincing that the defendant is not competent to refuse medication or treatment, under the standard specified in sub. (3)(dm), the court shall make a determination without a jury and issue an order that the defendant is not competent to refuse medication or treatment[.]

Section 971.14(3)(dm) (1989-90) was created, and it sets forth the standard chosen by the legislature that must be met before an incompetent defendant committed under § 971.14 can be involuntarily medicated:

> The defendant is not competent to refuse medication or treatment if, because of mental illness … the defendant is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment, and the alternatives to accepting the particular medication or treatment offered, after the advantages, disadvantages and alternatives have been explained to the defendant.

In the 1995-96 statutes, the legislature added a new standard allowing a finding of incompetence to refuse medication if "[t]he defendant is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness ... in order to make an informed choice as to whether to accept or refuse medication or treatment." Sec. 971.14(3)(dm)2. (1995-96). The language of § 971.14(3)(dm) and (4)(b) has remained substantively unchanged since then, even after our supreme court ruled that these subsections were unconstitutional to the extent they required courts to order involuntary medication without addressing the *Sell* factors. *Fitzgerald*, 387 Wis. 2d 384, ¶2.[13]

---

[13] In *State v. Fitzgerald*, 2019 WI 69, ¶2, 387 Wis. 2d 384, 929 N.W.2d 165, the supreme court held that WIS. STAT. § 971.14(3)(dm) and (4)(b) were unconstitutional to the extent they required courts to order involuntary medication without addressing the factors set forth in *Sell*. The legislature has not repealed or amended § 971.14 in response to *Fitzgerald*, so circuit courts must continue to make findings required by § 971.14(4)(b) in addition to analyzing the *Sell* factors before it can order the involuntary administration of medication to an incompetent defendant committed under § 971.14.

¶37 Given that, under *Jones*, defendants committed under WIS. STAT. § 971.14 were allowed to be forcibly medicated upon a finding that it was "necessary to prevent serious physical harm to" themselves or others, *Jones*, 141 Wis. 2d at 745, it is compelling that the legislature chose not to include this language when creating the involuntary medication procedure in § 971.14(3)(dm) and (4)(b), or when it added § 971.14(3)(dm)2. as a basis for finding the defendant incompetent to refuse medication. "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute[,]" and "[w]e assume that the legislature's intent is expressed in the statutory language." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶38 An incompetent defendant's dangerousness was not included as a basis for involuntary medication when the legislature created the involuntary medication procedures in WIS. STAT. § 971.14(3)(dm) and (4)(b), even though under *Jones*, providing no specific procedure at all would have made the involuntary medication procedures under WIS. STAT. § 51.61(1)(g)1. and 3. applicable. *See* *State v. Grady*, 2006 WI App 188, ¶9, 296 Wis. 2d 295, 722 N.W.2d 760 ("We presume that the legislature acts with full knowledge of existing case law when it enacts a statute."). We must honor this policy choice, especially where the legislative history confirms what is plain from the statutory language itself. *Kalal*, 271 Wis. 2d 633, ¶51 (recognizing that "legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation").

¶39 Our conclusion is also in accord with *State v. Wood*, 2010 WI 17, 323 Wis. 2d 321, 780 N.W.2d 63, a case interpreting whether a dangerousness finding was necessary before involuntarily medicating an individual committed under WIS. STAT. § 971.17. After a criminal defendant is found not guilty by

19

reason of mental disease or defect, they are committed for treatment and subject to the involuntary medication procedure in § 971.17(3)(c). *Wood*, 323 Wis. 2d 321, ¶29.

¶40 In *Wood*, the supreme court reasoned: "we do not believe that a finding of present dangerousness is required when considering whether to issue an order to forcibly medicate such an individual[,]" observing that WIS. STAT. § 971.17(3)(c) required only "that the person cannot express an understanding of the advantages, disadvantages, and alternatives to medication or treatment or that he or she has such an understanding but cannot apply it to his or her mental illness in order to make an informed choice." *Wood*, 323 Wis. 2d 321, ¶33. In addition to the plain language of the statute not requiring a finding of present dangerousness, the court observed that a finding of dangerousness is implied by the fact that the individual was ordered to institutional care as opposed to conditional release, because institutional care is imposed only when the court "'finds by clear and convincing evidence that conditional release of the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage.'" *Id.*, ¶35 (quoting § 971.17(3)(a)). No similar language exists in WIS. STAT. § 971.14. We conclude from our analysis that when the legislature wishes to authorize a circuit court to order involuntary medication based on an individual's dangerousness, it explicitly grants that authority, and it did not do so in § 971.14(3)(dm) and (4)(b).

### III. WISCONSIN STAT. § 971.14(2)(f) did not authorize the circuit court's involuntary medication order.

¶41 We conclude that the involuntary medication provisions in WIS. STAT. § 51.61(1)(g)1. & 3. do not apply to Naomi, and the State argues no other statutes in support of the circuit court's involuntary medication order based on

Naomi's dangerousness. However, we observe that the circuit court relied, in part, on WIS. STAT. § 971.14(2)(f) for authority to order involuntary medication based on Naomi's dangerousness. Section 971.14(2)(f) relates to the involuntary medication of defendants for whom competency has been raised and an examination is ordered, but a competency determination has not been made and commitment has not been ordered. It reads: "A defendant ordered to undergo examination under this section may receive voluntary treatment appropriate to his or her medical needs. The defendant may refuse medication and treatment except in a situation where the medication or treatment is necessary to prevent physical harm to the defendant or others." Sec. 971.14(2)(f). Naomi argues that § 971.14(2)(f) applies only during the examination stage of competency proceedings.

¶42 We agree with Naomi. In our view, the plain language of WIS. STAT. § 971.14(2)(f) makes clear that it does not apply after a competency decision has been made and commitment has been ordered. *Kalal*, 271 Wis. 2d 633, ¶45 ("'If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (Citation omitted.)). First, it specifies that it applies to "[a] defendant ordered to undergo examination under this section[,]" and not to individuals who have already been examined, found incompetent, and committed like Naomi. After the examination is conducted, the defendant is no longer presently "ordered to undergo examination." Second, viewed in the context of § 971.14(2) as a whole, subsection (2)(f) plainly governs the administration of medication or treatment during the period of time after an examination has been ordered but before a competency decision has been made and commitment has been ordered. The language of § 971.14(2) as a whole is geared toward defining the process under which the competency examination will take place, and subsection (2)(f) is no

different. *Kalal*, 271 Wis. 2d 633, ¶46 (explaining that "statutory language is interpreted in the context in which it is used" and that "the structure of the statute in which the operative language appears" is important to its meaning).

¶43 It is debatable whether WIS. STAT. § 971.14(2)(f) could be interpreted to apply to Naomi or a similarly situated defendant because Naomi was, after all, "ordered to undergo examination" under § 971.14(2) before she was committed.[14] To the extent § 971.14(2)(f) is ambiguous in this respect, we are persuaded that the legislative history of the involuntary medication provisions created in § 971.14(3)(dm) and (4)(b), as detailed above, conclusively demonstrates that dangerousness was not intended to be a basis for involuntary medication under § 971.14(3)(dm) and (4)(b). *Kalal*, 271 Wis. 2d 633, ¶¶47-48, 51 (explaining that "a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses" and that "[i]f a statute is ambiguous, the reviewing court turns to the scope, history, context, and purpose of the statute" (citation omitted)).

¶44 The legislature created the involuntary medication procedures in WIS. STAT. § 971.14(3)(dm) and (4)(b) swiftly after the supreme court applied the involuntary medication procedures in WIS. STAT. § 51.61(1)(g) to incompetent defendants committed under WIS. STAT. ch. 971, a standard that would have allowed involuntary medication based on the defendant's dangerousness. Given this history, we must view the absence of language authorizing courts to

---

[14] We question whether this interpretation is reasonable given that WIS. STAT. § 971.14(2)(f)'s authority to involuntarily medicate Naomi, under this interpretation, would span her entire life, because she will forever have been a "defendant ordered to undergo examination" under § 971.14(2).

involuntarily medicate these individuals based on dangerousness as a deliberate policy choice.

## CONCLUSION

¶45    We conclude that *Harper* and *Sell* do not create independent judicial authority to involuntarily medicate defendants committed under WIS. STAT. § 971.14 based on dangerousness, and WIS. STAT. § 51.61(1)(g)1. and 3. do not apply to § 971.14.[15]  Incompetent defendants committed under § 971.14 cannot be involuntarily medicated based on dangerousness absent the commencement of proceedings under WIS. STAT. ch. 51 or some other statute that authorizes involuntary medication based on the individual's dangerousness.  The request for involuntary medication would then be made in these parallel proceedings and would not be subject to the *Sell* factors because the involuntary medication is being requested on grounds other than rendering the defendant competent to stand trial.

¶46    Here, no parallel proceedings were commenced against Naomi.  The only statute under which she was committed was WIS. STAT. § 971.14, and that statute did not authorize the circuit court to order involuntary medication based on Naomi's dangerousness.  It was required to follow the involuntary medication provision under § 971.14 and apply the *Sell* factors, but it did not do so.  Therefore, we reverse and direct the circuit court to vacate the involuntary medication order.

---

[15] Although we conclude that the involuntary medication provisions of WIS. STAT. § 51.61(1)(g)1. and 3. do not apply to defendants committed under WIS. STAT. § 971.14, we observe that a defendant's right to refuse medication and to exercise informed consent are provided for and adequately protected by § 971.14(3)(dm) and (4)(b) in combination with *Sell*.

23

*By the Court.*—Order reversed.

Recommended for publication in the official reports.